IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JOEY ALEXANDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:25-cv-13 (MTT) |
| | ) |
| WRIGHT TRANSPORTATION, INC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

### ORDER

Plaintiff Joey Alexander initially filed this action against Defendants Wright Transportation, Inc. ("WTI") and James Alan Lain in the State Court of Houston County, Georgia. Doc. 3-1. On January 10, 2025, the defendants removed to this Court citing 28 U.S.C. § 1332. Docs. 1; 3. Alexander has moved to remand the case to State Court, arguing the removal was untimely under 28 U.S.C. § 1446(b). Doc. 6. For the following reasons, Alexander's motion to remand (Doc. 6) is **GRANTED**, and this case is hereby **REMANDED** to the State Court of Houston County.

### I. BACKGROUND

On May 11, 2023, Alexander, an employee at Happy Hour Service Center in Warner Robins, Georgia, was allegedly injured while loading cargo into a trailer operated by Defendant Lain, an employee of Defendant WTI. Doc. 3-1 ¶¶ 12-34. Lain allegedly drove the trailer away from the loading dock while Alexander was still loading cargo, causing Alexander and the forklift he was operating to fall several feet to the ground. *Id.* ¶¶ 19-21. As a result of the incident, Alexander claims he sustained

serious injuries to his spine, left elbow, wrists, arms, ankles, and legs.  *Id.*  ¶¶ 22-24, 34.  He also claims to have incurred significant medical expenses and lost wages, and experienced significant mental anguish and emotional distress.  *Id.*

On March 7, 2024, Alexander's attorney sent a settlement demand letter to WTI and Lain's insurer for $1,000,000.  Doc. 7-1.  The letter included descriptions of Alexander's injuries, his current medical expenses ($7,457.00), and supporting medical records, including a surgical estimate ($102,945.83)[1] for a recommended lumbar spine surgery, totaling $110,402.83 in current and future treatment costs. [2]  *Id.* at 2-9, 91-93.  Defense counsel acknowledged receipt of the demand on April 4, 2024.  Doc. 7-2.  Between April and May 2024, counsel exchanged several correspondence and Alexander's attorney provided additional medical records upon request.  Docs. 7-4; 7-5; 7-6.  On May 15, 2024, Alexander's attorney sent a revised, final settlement demand pursuant to O.C.G.A. § 51-12-14, reducing the demand from $1,000,000 to $265,000.  Doc. 7-8.  Neither the defendants nor their attorneys responded to the final, revised settlement demand.  Docs. 6 at 6; 7-8.

On October 2, 2024, Alexander filed this lawsuit against WTI and Lain in the State Court of Houston County, seeking compensatory, punitive, and general damages, as well as litigation costs and attorney fees.  Doc. 3-1.  No amount of damages was set forth in the complaint.  Docs. 3 ¶ 2; 3-1.  Both WTI and Lain were served with the

---

[1] Alexander provided a written surgical estimate from his orthopedic surgeon for $58,409.00.  Doc. 7-1 at 7, 336.  The remaining sum of $44, 536.83 "was obtained via communication with Atrium Navicent Health The Medical Center," which, according to Alexander, "refuses to provide written surgical estimates until the subject procedure is scheduled."  *Id.* at 7.

[2] Alexander's treating orthopedic surgeon, Dr. William B. Dasher, recommended a Transforaminal Interbody Lumbar Fusion (TLIF) at the L4-L5 level due to injuries allegedly linked to the May 11, 2023 accident.  Doc. 7-1 at 40-41, 77-78, 90-93.

complaint on October 7, 2024.  Doc. 1 at 45-51.  WTI and Lain answered the complaint on November 6, 2024.  *Id.* at 56-73, 76-93.  WTI also served Alexander with written discovery and a request for admission that the amount in controversy exceeded $75,000.  *Id.* at 43, 97.

On December 13, 2024, Alexander responded to WTI's discovery requests and admitted that the amount in controversy exceeded $75,000.  *Id.* at 97-110.  On January 10, 2025, the defendants removed to this Court, asserting that the amount in controversy exceeded $75,000 and that there was complete diversity among the parties.  Docs. 1; 3.  On February 9, 2025, Alexander moved to remand the case to the State Court of Houston County, arguing the removal was untimely.  Doc. 6.

## II. STANDARD

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction … to the district court of the United States for the district and division embracing the place where such action is pending."  Under 28 U.S.C. § 1446(b)(1)-(3), a notice of removal must be filed within 30 days after the defendant receives the initial pleading or within 30 days after receiving an amended pleading, motion, order, or other paper from which it can be ascertained that the case is removable.[3]  "For removal to be proper, the removing party must establish federal subject matter jurisdiction at the time the notice of removal is filed."  *Cross v. Wal-Mart Stores, E., LP*, 2011 WL 976414, at *1 (M.D. Ga. Mar. 17, 2011) (citing *Leonard v. Enterprise Rent-A-Car*, 279 F.3d 967, 972

---

[3] However, a case removed solely on the basis of diversity jurisdiction "may not be removed … more than 1 year after commencement of the action, unless the district court finds that the plaintiff … acted in bad faith in order to prevent a defendant from removing the action."  28 U.S.C. § 1446(c)(1).

3

(11th Cir. 2002)).  The party seeking removal bears the burden of establishing federal jurisdiction.  *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010).

Diversity jurisdiction exists if the opposing parties are citizens of different states and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.  Where "the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement."  *Pretka*, 608 F.3d at 752 (internal quotation marks and citation omitted).  The removing defendant may satisfy this burden by showing it is "facially apparent" from the complaint that the amount in controversy exceeds $75,000, "even when the complaint does not claim a specific amount of damages[,]" or with the use of additional evidence demonstrating removal is proper.  *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (internal quotation marks and citations omitted).  Any uncertainties should be resolved in favor of remand.  *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) (citations omitted).  "[C]ourts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements."  *Roe*, 613 F.3d at 1062.

### III. DISCUSSION

Alexander argues the removal of this case to federal court was untimely because the defendants had actual knowledge based on pre-suit settlement demands and supporting medical records that the amount in controversy exceeded $75,000, yet they did not file their notice of removal until January 10, 2025—95 days after service of the complaint on October 7, 2024.  Docs. 6; 6-1 at 11-20.  Therefore, according to Alexander, the notice of removal was untimely.  Doc. 6-1 at 11-12, 14-20.

Defendants argue that the removal was timely under 28 U.S.C. § 1446(b)(3)[4] because they did not have definitive notice of the amount in controversy until Alexander responded to WTI's requests for admissions on December 13, 2024.  Doc. 11.  These responses, according to the defendants, were the first definitive confirmation that the amount in controversy exceeded $75,000.  *Id.*  at 4, 7.  The defendants argue Alexander's pre-suit demands were insufficient to trigger the removal period because neither the complaint nor the demands provided a clear and unambiguous statement of the amount in controversy.  *Id.* at 5-6.  The defendants also argue that Alexander's pre-suit demands were speculative and amounted to mere "puffing" or posturing because Alexander's existing medical specials were limited to $7,457.00.  *Id.* at 3-4, 7-9.  The Court disagrees.

First, the pre-suit demands, along with the complaint, provided a clear basis for removal.  *Pretka*, 608 F.3d at 754-56; *see Golden v. Dodge-Markham Co.*, 1 F. Supp. 2d 1360, 1364-65 (M.D. Fla. 1998) (collecting cases).  "Settlement offers do not automatically establish the amount in controversy for purposes of diversity jurisdiction." *Lamb v. State Farm Fire Mut. Auto. Ins. Co.*, 2010 WL 6790539, at *2 (M.D. Fla. Nov. 5, 2010).  Instead, courts analyze whether demand letters merely "reflect puffing and posturing," or whether they provide "specific information to support the plaintiff's claim for damages" and thus offer a "reasonable assessment of the value of [the] claim." *Jackson v. Select Portfolio Servicing, Inc.*, 651 F.Supp.2d 1279, 1281 (S.D. Ala. 2009).

---

[4] If the amount in controversy cannot be discerned from the face of a complaint, 28 U.S.C. § 1446(b)(3) allows a defendant to remove a case to federal court within 30 days after receipt of a document or other paper from which it may first be ascertained that the case is removable.

Prior to service of the complaint, the defendants received a detailed settlement demand for $1,000,000 as well as a revised, final settlement demand for $265,000 based on current ($7,457.00) and future ($102,945.83) medical expenses totaling $110,402.83.  Docs. 7-1; 7-8.  The settlement demands were not arbitrary figures but were supported by over 300 pages of medical records, billing statements, and anticipated surgical costs.  See Doc. 7-1 at 10-338.  Alexander's future treatment costs were supported by medical records documenting a recommended lumbar spine surgery linked to the May 11, 2023 incident as well as a surgical estimate ($58,409.00) obtained from Alexander's orthopedic surgeon.  Doc. 7-1 at 7, 90-93, 336.  Accordingly, the demands provided specific information to support Alexander's claim for damages.  The defendants' contention that the complaint was silent regarding the amount of damages does not change the fact that they were in possession of these documents establishing that the amount in controversy exceeded $75,000 well before removal.

Second, even if the initial $1,000,000 demand could be considered "mere puffery," Alexander's final settlement demand of $265,000 pursuant to O.C.G.A. § 51-12-14 clearly is not puffing.[5]  Doc. 7-8.  In the Court's long experience, such demands are based on a lawyer's realistic assessment of the value of the case.  "Puffing" up the demand would make little sense because the goal, at that point, is to secure a verdict that would trigger O.C.G.A. § 51-12-14's penalties.  With over $100,000 in special damages and an orthopedic surgeon's opinion that back surgery is necessary, a $265,000 demand is not puffing.

---

[5] Under O.C.G.A. § 51-12-14, also known as the "Unliquidated Damages Interest Act," a tort claimant has a one-time opportunity to send a certified demand for a specific amount.  If that amount is not paid within 30 days, and the plaintiff receives a verdict at trial of at least the amount demanded, then the plaintiff can recover interest on the amount demanded.  § 51-12-14 (a), (e).

6

Accordingly, while the defendants claim that the amount in controversy was not evident until receiving Alexander's responses to WTI's requests for admissions on December 13, 2024, this argument is unavailing.  Doc. 11 at 7-9.  The pre-suit demands, coupled with Alexander's complaint, provided a clear basis for removal.  *Pretka*, 608 F.3d at 754-56.  Therefore, the defendants failed to timely file their notice of removal under 28 U.S.C. § 1446(b).

### IV. CONCLUSION

For the foregoing reasons, Alexander's motion to remand (Doc. 6) is **GRANTED**, and this case is hereby **REMANDED** to the State Court of Houston County.

**SO ORDERED**, this 2nd day of April, 2025.

<pre>
                              S/ Marc T. Treadwell
                              MARC T. TREADWELL, JUDGE
                              UNITED STATES DISTRICT COURT
</pre>